## No. 2759.

### B. A. HIGGENBOTHAM *v*. THE STATE.

PERJURY—EVIDENCE—CHARGE OF THE COURT.—It was not error to permit the State in a trial for perjury, to read in evidence the complaint filed in the cause upon the trial of which the perjury was alleged to have been committed, inasmuch as such evidence was competent to prove that the alleged false statements were made in the judicial proceeding and before the court alleged in the indictment, but, having admitted such evidence, the trial court, in its charge, should have limited its effect to such purpose only.

APPEAL from the District Court of Rains. Tried below before H. W. Martin, Esq., Special Judge.

The conviction was for perjury, and the penalty assessed was a term of five years in the penitentiary.

The State first introduced in evidence the complaint by which the offense of forgery was charged against one Joe Bryant, in that the said Bryant, having received from one Belcher an order on one Cain for one dollar's worth of goods, erased the word "one" in said order and substituted the word "two."

By agreement of the parties the State next read in evidence the written testimony of A. T. Dykes, taken upon the examining trial of Joe Bryant. The substance of that testimony was that, on the twenty-fifth day of July, 1885, the witness gave to the said Bryant an order on T. M. Cain for one dollar's worth of goods, drawn by B. A. Belcher, in favor of bearer, which order the witness obtained from one Rounsaville. Witness next saw that order in the possession of T. M. Cain. The word "one" before the word "dollars" had been erased, and the word "two" substituted in its place. So far as the witness knew, no one but John Eaton was present when witness gave the said order to the

said Bryant.· If B. A. Higgenbotham was ever at the witness's house, the witness did not know it.

John Eaton testified, for the State, in substance that he was at Dykes's house on one occasion in July, 1885, when Joe Bryant came to that house and had a settlement with Dykes. In that settlement Dykes gave Bryant fifty cents in money and an order on T. M. Cain for one dollar's worth of goods. No one was present at that time but Bryant, Dykes and witness, Mrs. Dykes and Mrs. Griffin having shortly before gone to Joe Bryant's house. Defendant at that time lived in Upshur county, and if he was then in Rains county the witness did not know it. Witness did not read the order, and could not say of his own knowledge that it called for but one dollar's worth of goods, but its face value was so stated by the parties to the transaction, although Bryant said that its real value was but seventy-five cents.

The State next introduced in evidence the written testimony of the defendant taken upon the examining trial of J. W. Bryant. It reads as follows: "I live in Upshur county. I was in Rains county about July 25, 1885, and went with defendant, Joe Bryant, to the residence of H. T. Dykes, and said Dykes give to Joe Bryant an order signed by B. A. Belcher to T. M. Cain for two dollars in goods. I am certain this is the order, because Joe Bryant owed me, and I offered him two dollars for it after reading it. I was here for one day only, and let myself be seen as little as possible while here, being on strictly private business. Cross examined : I went with Joe Bryant to Mr. Dykes's·house. We went in the house. Did not see any one there except Mr. Dykes. Dykes gave Bryant the order then. Then we went back to Bryant's.

                                        B. A. Higgenbotham."

· County Attorney Brock was next placed upon the stand by the State, and identified the written instrument just read in evidence as the written testimony of the defendant, taken upon the examining trial of J. W. Bryant. He knew as a fact that the oath was administered to the defendant before he delivered that testimony, and that the defendant, after it was reduced to writing, signed it.

W. P. Harrison testified, for the State, that if defendant was in Rains county in July, 1885, he, witness, did not know it. Witness, in July, 1885, owned the order in evidence. It then called for one dollar's worth of goods from Cain's store, and was

written by B. A. Belcher in the witness's presence.    Witness let
Bob Rounsaville have the said order.    He next saw the said order
on the examining trial of Joe Bryant for raising said order from
one to two dollars.    He heard the defendant testify, on that
trial, that he saw Dykes give the said order to Bryant, and that
it then called for two dollars worth of goods. ·

The State rested.

J. W. Bryant testified, for the defense, that in July, 1885, he
went to the house of H. T. Dykes, in Rains county, and obtained
from the said Dykes an order on Cain's store for one dollar's
worth of goods, which order was signed by H. T. Dykes.    John
Eaton was the only other person present at the time.    On a sub-
sequent occasion in said July, witness, in company with the
defendant, went to the house of the said Dykes, and Dykes gave
witness another order on Cain's store for goods.    That order was
signed by B. A. Belcher, and called for two dollars worth of
goods.    Defendant, witness and Dykes were the only persons
present on that occasion.    Witness was the man who was
charged before Justice of the Peace Lamb with the forgery of
the two dollar order.    He made no voluntary statement on his
examining trial, nor did he then question Dykes about the one
dollar order signed by him, Dykes.    That one dollar order was
not honored at Cain's store, and Dykes went with witness to
Zuckerman's store, where it was paid.    Neither Mrs. Dykes nor
Mrs. Griffin were at his house in July, 1885.

Mrs. Joe Bryant testified, for the defense, that the defendant
came to her house late one evening in July, 1885, and went with
Joe Bryant towards Dykes's house, to which house Bryant said
that he was going.    Witness did not know, except from what
the parties said after their return, that they went to Dykes's
house.    She did not testify on her husband's examining trial,
when he was charged with the forgery of this order.    Witness
had no recollection of a visit paid to her house in July, 1885, by
either Mrs. Dykes or Mrs. Griffin.

The defense closed.

Mrs. Griffin testified, for the State, in rebuttal, that late one
evening in July, 1885, she and Mrs. Dykes went from Dykes's
house to that of Joe Bryant.    Upon their arrival, Joe Bryant
said that he was going to Dykes's house to see Dykes, and he
went off in that direction.    On her return to Dykes's house, on
that night, the witness heard Mr. Dykes say that he gave Joe
Bryant an order on Cain's store, signed by B. A. Belcher.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellants.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This appeal is from a conviction for perjury alleged to have been committed by the defendant when testifying as a witness before an examining court in a cause wherein the State was plaintiff and one J. W. Bryant was defendant, said Bryant being charged with forgery.

On the trial of this cause, the State read in evidence the complaint in writing and under oath, made by one Dykes, charging J. W. Bryant with forgery, and upon which the prosecution against Bryant, in which prosecution the alleged perjury was committed, was founded; and also read in evidence the testimony of said Dykes given on the trial of said complaint and reduced to writing before the examining court.

Having admitted this extraneous evidence for the purpose of proving the alleged false statements made by the defendant in the judicial proceeding, and before the court alleged in the indictment, and to show the issue joined in said proceeding, it was the imperative duty of the court, in its charge to the jury, to instruct that such testimony could not be considered by the jury in determining the main issue—which was the willful and deliberate falsity of defendant's statements—but could only be considered for the specific purposes above named. (Davidson v. The State, 22 Texas Ct. App., 372; Maines v. The State, 23 Texas Ct. App., 568.) This duty the trial judge failed to perform, and the omission is error for which the conviction must be set aside, and error which the Assistant Attorney General has confessed.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*